**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

      v.                            21CR25

ERIC HOLLOWAY

    Defendant.

**SENTENCING MEMORANDUM AND OBJECTIONS**
**AND CORRECTIONS TO THE PRESENTENCE REPORT**

# TABLE OF AUTHORITIES

## CASES

*United States v. Booker*, 543 U.S. 220 (2005) ................................................................ 1

*Gall v. United States*, 552 U.S. 38 (2007) ..................................................................... 1

*Stewart v. Duckworth*, 93 F.3d 262 (7th Cir. 1996) ........................................................ 4

*Braxton v. United States*, 500 U.S. 344 (1991) ............................................................ 4

*United States v. Perez*, 43 F.3d 1131 (7th Cir. 1994) ..................................................... 5

*United States v. Jones*, 681 F.2d 610 (9th Cir. 1982) ..................................................... 5

*United States v. Kwong*, 14 F.3d 189 (2d Cir. 1994) ....................................................... 5

## STATUTES

18 U.S.C § 3553(a) ................................................................................... 1, 5, 14

U.S.S.G. § 2A2.1(a)(2) ................................................................................... 3, 4

U.S.S.G. § 2K2.1 ................................................................................... 3, 15-16

U.S.S.G. § 2X1.1 ................................................................................... 15

U.S.S.G. § 2A2.2 ................................................................................... 15-16

## OTHER AUTHORITIES

Nancy Stordahl, *8 Tips for Coping with the Death of a Parent,* HuffPost (Feb. 17, 2015) ........... 8

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ i

TABLE OF CONTENTS ................................................................................................... ii

**DEFENDANT'S SENTENCING MEMORANDUM** ............................................... 1

  I.   **OVERVIEW OF SENTENCING REQUEST** ............................................... 1

  II.   **NATURE AND CIRCUMSTANCE OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT** ......................................... 1

    **A. The nature and circumstance of the offense** ..................................................... 1

      1. *This case started in state court, where Eric was charged with unlawful possession of a weapon by a felon and aggravated discharge of a firearm* ...................................................................................................... 1

      2. *Eric had the gun for protection* ................................................................. 2

      3. *Guideline § 2A2.1(a)(2) does not apply because the defendant did not attempt to commit murder other than first-degree murder* ........................ 3

    **B. In considering the § 3553(a) factors, Eric's history and characteristics justify a 30-month sentence** ..................................................................................... 5

      1. *Eric had a challenging and difficult childhood* ........................................ 6

      2. *Eric's father passed away while Eric was in custody and Eric was overwhelmed with grief* ............................................................................ 7

      3. *At 28 years old, Eric has lost an incredible number of friends and family to gun violence and sudden death* ............................................................. 9

      4. *Eric has struggled with mental health issues for most of his life* .............. 10

      5. *This court should impose a sentence of 30 months because Eric has plans for the future* ............................................................................................ 11

  III.   **WHEN CONSIDERING THE NEED FOR THE SENTENCE IMPOSED TO REFLECT ADEQUATE DETERRENCE AND JUST PUNISHMENT, 30 MONTHS IS AN APPROPRIATE SENTENCE** ....................................... 14

  IV.   **OBJECTIONS AND CORRECTIONS TO THE PRESENTENCE REPORT** ....... 14

    **A. Objections to the Presentence Report** ............................................................ 14

**1. Eric objects to the base offense level of 19** ........................................... 14

**B. Corrections to the Presentence Report** ........................................................... 16

**1. Paragraph 67** ........................................................... 16

**2. Paragraph 83** ........................................................... 16

**V.    CONCLUSION** ........................................................................................................... 16

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Eric Holloway, by his attorney, Dena M. Singer of Bedi & Singer, LLP, respectfully requests, pursuant to 18 U.S.C § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005) and its progeny, that this Court impose a sentence of 30 months, followed by a term of supervised release. In support of this request, Eric states as follows:

### I.    OVERVIEW OF SENTENCING REQUEST

A 30 month sentence is sufficient but not greater than necessary to meet the purposes of sentencing because (1) Eric possessed the weapon not meaning to harm anyone, (2) Eric had a difficult childhood which impacted him into adulthood, and (3) Eric has plans for the future to support his family including his children. Pursuant to 18 U.S.C. § 3553(a) and *Gall v. United States*, 552 U.S. 38 (2007), 30 months is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

### II.    NATURE AND CIRCUMSTANCE OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF THE DEFENDANT

An analysis of the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and Eric's history and characteristics, reflect that a sentence of 30 months is appropriate.

#### A.  The nature and circumstance of the offense

The nature and circumstance of the offense, the reason Eric possessed a weapon, and the fact that this was not an attempt murder, all show a sentence of 30 months is appropriate.

> *1.    This case started in state court, where Eric was charged with unlawful possession of a weapon by a felon and aggravated discharge of a firearm*

On August 21, 2020, Eric was at or near the 6300 block of South Wolcott Avenue in Chicago, Illinois, when a commotion occurred. At that time, other individuals in a car drove by

1

where Eric and others were standing and fired shots. Eric took possession of a loaded Smith & Wesson semi-automatic firearm inside a vehicle. Eric shot in the direction of the car which had fired shots. Eric was not permitted to have a firearm because he was previously convicted of a crime punishable by a term of imprisonment exceeding one year.

Eric was subsequently arrested by Chicago Police Department officers. He was charged in Cook County, Illinois, with unlawful possession of a weapon by a felon and aggravated discharge of a firearm. (Ex. 1).[1] Eric was not charged with an attempt murder in state court. On January 12, 2021, a single-count indictment was filed in this Court based on the same facts underlying the state court charge.

### 2. Eric had the gun for protection

Eric profoundly regrets his decision to possess and discharge a gun on August 21, 2020. He knows that having a gun is illegal, and he makes no excuses for carrying a gun that day. However, in the summer of 2019,[2] Eric himself was the victim of gun violence. (Ex. 2). Eric had been spending time with family and friends in Chicago. (Ex. 2). When a conflict arose between a member of Eric's group and another group of individuals, Eric and his group left the area and went to a nearby beach. (Ex. 2). While at the beach, Eric saw the same group of individuals with whom his group had the earlier altercation. (Ex. 2). Eric told probation a fight then "broke out" between the two groups. (PSR, ¶67). At all times, Eric was unarmed and was not involved in the confrontation. (Ex. 2). Eric indicated to probation that "an unknown person drew a firearm and fired multiple rounds of ammunition." (PSR, ¶67). Eric heard gunshots and felt his "leg go out." (Ex. 2). He started yelling, "I'm hit. I'm hit." (Ex. 2). Eric had been struck by a bullet and

---

[1] Eric was on parole at the time of this offense. Because of his parole status a violation of parole was filed and he was ordered to serve time on his parole violation. He was discharged from IDOC when his parole ended on October 19, 2020 and returned to Cook County Department of Corrections. Eric was released on bond on November 7, 2020. Eric self-surrendered to federal custody on February 2, 2021 and has been detained ever since. (PSR at 2). Therefore, Eric served 79 days prior to the federal indictment.

[2] See *infra* section IV(A) Objections to the PSR.

sustained a gunshot wound to his right leg. (PSR, ¶67). The ambulance arrived on the scene and transported him to a nearby emergency room. (Ex. 2). To this day, the bullet remains in his leg. (Ex. 2). That summer night, Eric did not possess a weapon and was not involved in an altercation. (Ex. 2). Eric only wanted to enjoy a summer night in Chicago with family and friends. Unfortunately, that is not what occurred. Eric describes this shooting as a "traumatic experience." (PSR, ¶67). The memory of that evening continues to have repercussions for him.

Because of this, on the day of Eric's arrest for the instant case, he had the gun for protection. He had no plans to display it, use it, or fire it. As is indicated in the plea agreement, a car drove by and shot at the crowd. Only after that Eric shot back, though not to harm anyone.[3] He just wanted to calm the situation down. While misguided, Eric did not intend to harm or strike any of the occupants in that vehicle. Eric knows this explanation does not excuse his actions. However, he offers it as a reason for his conduct.

### 3. Guideline § 2A2.1(a)(2) does not apply because the defendant did not attempt to commit murder other than first-degree murder

As is evidenced by the plea agreement, there is a disagreement between the parties as to the base offense level. The government's calculation of the base offense level is 27, before acceptance of responsibility, because the government argues that § 2A2.1(a)(2) applies. This is not accurate.[4]

The facts of this case do not support the imposition of the guideline as evidenced by the Eric's statement that he had no specific intent to commit murder. After Eric was arrested by the Chicago Police Department he was taken to a local police station. While there, Eric made a

---

[3] This will be discussed further in Section II(A)(3).
[4] The defendant submitted its position regarding this enhancement to probation which is attached to the PSR. The defendant at that time opined the base offense was 24. However, after reviewing the PSR and the guideline manual again, defendant has changed his position and asserts the base offense level is 14 under §2K2.1(a)(6)(A). See *infra* Section IV(A)(1) for further detail.

3

statement to the Chicago Police which demonstrates he did not try to commit murder. During his statement, Eric described the scene "... I'm trying to calm my other brother down with some females. The only thing I know shit, that is motherfuckers got too out of hand." (Ex. 3).[5] The officer then asked Eric what do you mean by too out of hand and Eric replied, "motherfuckers got to fighting and stuff you feel me trying to break it up it was too much you know what I'm saying. Commotion, you know how it goes shooting in the air shooting to calm the commotion down and everyone everybody where we all just came from is family." (Ex. 3). Officers continued to question Eric, "so you're saying that the shooting that occurred was kinda to calm the situation?" (Ex. 3). Eric answered in the following manner: " . . . It wasn't no ... they pull up in the neighborhood and start shooting, it was none of that. It was just trying to calm the commotion down, you know what I'm saying?" (Ex. 3). Later in the questioning, Eric states: "I wasn't trying to shoot no gun just to harm nobody." (Ex. 3). Eric says several times in his interview that he was not trying to shoot to harm anybody. (Ex. 3). At no point during his statement does Eric express any intention to harm anyone during the incident. Moreover, no one was shot or injured in this incident.

Furthermore, the applicable law does not support the imposition of the guideline. Guideline 2A2.1(a)(2) does not apply because Eric did not attempt to commit murder. While the government does not have to prove an enhancement beyond a reasonable doubt, the government does have to prove the enhancement by a preponderance of the evidence. In order to prove a person guilty of attempt murder, the government must establish "proof of specific intent to kill the victim." *Stewart v. Duckworth*, 93 F.3d 262, 266 (7th Cir. 1996); *Braxton v. United States*,

---

[5] Exhibit 3 was provided as a DVD-R to the United States Probation Department and U.S. Attorney's Office. This video is labeled Axon_Body_3_Video_2020-08-22_0307.

4

500 U.S. 344, n. ** (1991) ("an attempt to commit murder requires a specific intent to kill."). To be convicted of attempt murder under federal statute, "there must exist both the criminal conduct of assault and a specific intention to murder a human being." *United States v. Perez*, 43 F.3d 1131, 1137 (7th Cir. 1994). Courts have found error and reversed attempt murder convictions when any definition less than specific intent to kill was given as a jury instruction. *Id.* at 1138; *United States v. Jones*, 681 F.2d 610 (9th Cir. 1982); *United States v. Kwong*, 14 F.3d 189 (2d Cir. 1994) (for example, the mens rea of "recklessness" is not enough for an attempt murder conviction). The Seventh Circuit has found "an intent to act in callous and wanton disregard of the consequences to human life is not the specific intent that is a prerequisite for" an attempt murder conviction. *Perez*, 43 F.3d at 1139. A reckless intent is not enough to satisfy an attempt murder conviction and is not enough to satisfy the sentencing enhancement and base offense level here. The stringent standard of a specific intention to murder an individual must be met in order for someone to be convicted of attempt murder.

The government cannot prove by a preponderance of the evidence this enhancement applies as there is no evidence to prove specific intent. In fact, Eric did not have any intent to harm anyone. Because the facts of this case do not establish that Eric had any specific intent to commit murder, the government will not be able to meet the burden by a preponderance of the evidence. Therefore, his base offense level cannot be increased for possessing a firearm in connection with the felony offense of attempt murder, and Eric's base offense level is not 27.

### B. In considering the § 3553(a) factors, Eric's history and characteristics justify a 30-month sentence

Eric's childhood, the recent passing of his father, his personal experience as a victim of gun violence, his mental health, the support he provides his children, and his plans for the future all show that 30 months is an appropriate sentence.

## *1. Eric had a challenging and difficult childhood*

Eric was born on April 17, 1994, in Chicago, Illinois to the non-marital union of Eric Holloway, Sr. and Leia Jones. (PSR, ¶49). Eric also shares his parents with a younger brother, Malik. (PSR, ¶50). Eric's parents split up when he was about five years old because his father had been unfaithful to his mother. (PSR, ¶48).

For most of Eric's childhood, his father was out of his life. Eric recalls that because his parents did not have a good relationship, his relationship with his father was impacted. (Ex. 2). In Eric's view, when a mother and father do not get along, it is the kids who suffer. (Ex. 2). Eric recalls "his father 'tried' to rear him, but that they 'split heads' in large part because the elder Mr. Holloway didn't get along with [Eric's] mother." (PSR, ¶49). Eric believes that even if parents do not get along, "people still need their father." (Ex. 2). Eric reflects that "no matter how old you are, you need a father." (Ex. 2). Eric believes that if his dad had been around, his life would have turned out differently. "'If I would have had a father figure, I probably wouldn't be in the situation I'm in. I don't think I had options, I went in the wrong direction and I made wrong choices." (PSR, ¶53). Eric's mother, Leia, agrees with this assessment. She stated that Eric was a "'good kid,' but he lacked the presence of his father and she was forced to rear [Eric] as best she could in impoverished circumstances." (PSR, ¶54). Leia relates, "'I love my son and he wouldn't have strayed if his dad was around.'" (PSR, ¶54).

Eric remembers distinctly what his life was like when his mother discovered that his dad was cheating. Eric says, "[t]here was no respect." His mother was "independent" and she "would not put up with it." (Ex. 2). Not only was his relationship with his father decimated by his father's unfaithfulness, but his home situation was as well. Though his dad "did what he could," his mother could no longer afford the house where they had been living, and they were forced to move. As his mother puts it, "I was a single mother raising 3 boys in poverty in the Englewood

6

area of Chicago." (Ex. 4). Leia recalls, "I did the best I could with what I had." (Ex. 4).

Although Eric was never abused or neglected by a child, he did recount instances when his mother gave him "'whoopings,'" sometimes using a belt. (PSR, ¶48). Eric stressed that these punishments were intended to "correct his behavior" and that he was "'getting what I needed.'" (PSR, ¶48).

Thus, Eric was primarily raised by a single mom. Eric describes his mother as "my everything." (PSR, ¶49). Eric's mother describes their relationship similarly. She says Eric has "a genuine heart," is "very generous" and "loves hard when it comes to family and his closest friends." (Ex. 4). Eric's challenges growing up are another reason why 30 months is the appropriate sentence.

### 2. *Eric's father passed away while Eric was in custody, and Eric was overwhelmed with grief*

As discussed above, Eric and his father, Eric Holloway Sr.[6] were not close when Eric was a child. However, as Eric got older, he and his father began establishing the positive and loving relationship that Eric had craved as a child and valued as an adult.

Regrettably, on April 23, 2022, his father unexpectedly passed away of an unknown cause while Eric was in custody. (PSR, ¶49). Eric Sr. was 50 years old. (PSR, ¶49). Eric was unable to attend the funeral. Although this Court granted him permission to do so, a probation warrant out of Cook County, Illinois, prevented it. The Cook County Public Defender's office attempted to gain permission from the court for him to attend, but the Judge in Cook County would not allow it.[7]

Though the death of a parent is an expected rite of passage, Eric was shocked and

---

[6] Hereinafter, Eric's father will be referred to as Eric Sr.
[7] The probation violation is based on this case. While the judge would not quash the warrant, he will address the warrant and the probation matter once Eric is sentenced on this federal matter.

saddened by the sudden death of his father. According to research, "[w]hen a parent dies … [w]e are expected to pick ourselves up, close the wound quickly and move on. We should not require much time to get over it. However, just because the death of a parent is commonplace and is the natural order of things, this does not mean a person can or should be expected to simply and quickly bounce back. On the contrary, the death of one's parent(s) is extremely difficult for most if you have had a good relationship with your parent(s) and even if you haven't. In fact, sometimes the latter makes it even more difficult due to unresolved issues or conflicts."[8] Research presupposes that even when the grieving process is arduous, the adult child has been able to mourn: to participate and partake in the grieving process, whether that be a funeral, a memorial, a wake, a burial, a cremation, a celebration of life, paying respects to the surviving family, or just an exchange of memories and a telling of stories - often referred to as "closure." However, Eric was precluded from these traditional rituals. Eric never got to say goodbye to his father, and since he has been in custody, Eric has been unable to pay his respects or fully grieve the loss of his father. Eric has suffered his loss alone. The loneliness is distressing and omnipresent. While Eric knows it was his own actions that caused him not to be present for his father's funeral, it is still distressing. Eric thought he had time to be with his father after his release to continue to mend and build their relationship.

Eric and his father had plans for Eric to go live with his father and stepmother in Clinton, Iowa if he was given permission by this court upon his release. (Ex. 5). While the dream of living with his father is a lost dream, Eric still plans to move to Clinton to be with his stepmother as will be discussed more fully below. The death of Eric's father before Eric was able to fully realize a relationship with him is another reason why 30 months is the appropriate sentence.

---

[8] Nancy Stordahl, *8 Tips for Coping with the Death of a Parent,* HuffPost (Feb. 17, 2015) https://www.huffpost.com/entry/eight-tips-for-coping-with-the-death-of-a-parent_b_6672504.

### 3. At 28 years old, Eric has lost an incredible number of friends and family to gun violence and sudden death

At the young age of 28, Eric has lost many friends and family members. On September 11, 2004, when Eric was only ten years old, he lost his older half-brother, also named Eric Holloway, to gun violence in Gary, Indiana. (Ex. 6). His brother was merely sixteen years old. According to Eric's mother, Eric was "deeply affected" by the death of his brother. (PSR, ¶49).

On August 9, 2012, around 11:40 am, Eric's cousin Divonte Young was shot and killed by a Chicago Police Officer on drug surveillance in the vicinity of 63rd and Honore. (Ex. 2). Divonte lived only a block from where he was killed. Divonte was struck one time in the back and died from his injuries.[9] Divonte was just twenty years old.[10]

On July 5, 2014, Eric lost another cousin, Deandre Brown, to a street shooting. Deandre was shot in the leg and the abdomen while in the 8700 block of South Houston Avenue around 10:20 that morning. (Ex. 7). He died a short time later. (Ex. 7). Deandre was 33 years old. Eric has a vivid memory of being at the mall when he learned Deandre had been killed. (Ex. 2). Eric was devastated.

In July 2021, another cousin, Corky Boss, was struck down by gun violence. He was around 29 years old. (Ex. 2). Other losses include Eric's friend, Coco, who committed suicide on January 1, 2021. Eric also lost his cousin Molly Young when she was killed in a car accident when she was 29 or 30 years old. Similarly, his best friend, Chris Jackson, was also killed in a car accident on his way to Iowa.

Eric's cousin, LaShawnda D. Young,[11] is the president of Hip Hop Off the Street Club, a youth organization in Chicago. (Ex. 8). She observes that although she has tried to influence

---

[9] *City to Pay $62,500 Over Delayed Shooting Records*, CBS Chicago, (Nov. 25, 2017)
https://www.cbsnews.com/chicago/news/city-to-pay-62500-over-delayed-shooting-records/
[10] Divonte's mother filed suit against the city: Lawshanda Young v. City of Chicago; And Unknown Chicago Police Officer(s); 13 C 5651. The case is pending.
[11] LaShawnda is the mother of his deceased cousin Divonte Young.

Eric's life positively, the "many family tragedies" have had a "negative effect" on Eric. (Ex. 8). At 28 years old, Eric has lost an incredible number of people to sudden death and to gun violence. While Eric has been in custody, his mother has aged, his children have gotten older, and his father has died. He has also lost many others whom he loved. Eric cannot even accurately recall all the names and dates of those who have died since he has been locked up. (Ex. 2). Eric has begun to understand that the passage of time is critical. The time he has lost during incarceration is time he will never get back. The massive losses Eric has suffered should be considered by this Court when considering a sentence.

### 4. Eric has struggled with mental health issues for most of his life

Eric has grappled with mental health issues since childhood. He first met with a school psychologist when he was about five years old. (PSR, ¶69). Eric was referred to a psychologist because of issues including a learning disability and behavior disorder. (PSR, ¶69). Eric recalls that he was not paying attention and was sleeping in class. (PSR, ¶69). He was diagnosed with attention deficit hyperactivity disorder (ADHD). (PSR, ¶69). As a result, Eric was prescribed Ritalin and placed in special education classes. (PSR, ¶69). He took Ritalin "'off and on'" because he did not think he needed it. (PSR, ¶69).

Eric attended and graduated from Fox Tech, an alternative high school affiliated with East Aurora High School. (PSR, ¶81). While there, he met with a counselor roughly twice a month whenever he wanted to talk to someone. (PSR, ¶70). The counselor helped him calm down. (PSR, ¶70). Eric would also meet with a counselor when he became frustrated with his inability to do certain tasks in class. (PSR, ¶70). Eric graduated high school in 2012. (PSR, ¶81).

In 2014, while imprisoned in the Illinois Department of Corrections, Eric was diagnosed with anxiety disorder. (PSR, ¶71). Eric recalls he was "'stressing,' having trouble sleeping, and

'thinking too much.'" (PSR, ¶71). Eric relates that he was prescribed Remeron and met with prison mental health staff once every 60 days. Eric continued to take Remeron upon his release from custody. However, he did not follow up with any mental health professionals. (PSR, ¶71).

In late 2020, while in the custody of the Illinois Department of Corrections, Eric was again diagnosed with anxiety disorder and prescribed Remeron. (PSR, ¶72). He was also prescribed Remeron while in the custody of Cook County Jail in 2020. (PSR, ¶72). Eric has not been prescribed any psychotropic medications during the incarceration for the instant case. (PSR, ¶72). He may be in need of psychotropic medication for anxiety. (PSR, ¶72). Moreover, the lockdown conditions resulting from the COVID-19 pandemic caused him to have headaches. (PSR, ¶72).

Eric understands that he needs to confront the mental health issues that have plagued him since early childhood. While Eric has received sporadic treatment throughout the years, the treatment has been insufficient and inconsistent. From time to time, Eric has used marijuana "to help him cope with nervousness and to be calm and attentive." (PSR, ¶77). Eric knows this is neither a long-term nor an appropriate solution, and he wants to learn to cope with his mental health issues without using marijuana. (PSR, ¶77). To succeed once he is released, Eric needs to learn the most productive way to deal with his mental health challenges. Eric wants mental health treatment. Eric's struggles with mental issues and his hope to finally receive treatment is another factor to be considered when crafting a sentence.

### 5. *This court should impose a sentence of 30 months because Eric has plans for the future*

Since Eric has been incarcerated, he has grown and matured. Eric has begun to appreciate the value of friends and family. Eric has three children. His oldest child is his 10-year-old son Mckael Nathan. (PSR, ¶56). Mckael lives in Clinton, Iowa with his mother,

11

Monnesha Nathan. Eric readily admits that at 18 years old, he was young and irresponsible when Mckael was born. He did not want a baby nor did he have any desire to be in his son's life. (Ex. 2). Eric did not even want to hold Mckael when Mckael was an infant. (Ex. 2). Now, Eric's perspective has totally changed. Eric "feels terrible" that he "abandoned" his son. Now he and Mckael talk whenever possible and Eric loves when Mckael says, "That's my daddy." (Ex. 2).

Thus, with the court's permission, Eric dreams of moving to Clinton to help Monnesha take care of Mckael. Initially, Eric had hoped to live with his father in Clinton, but with his father's passing, he plans to live with his stepmother. (Ex. 2). Eric's mother particularly hoped that the move to live with his father would have a positive impact on Eric. "I'm hoping that my son learns from this and goes to Clinton, Iowa where he can get comforting with his dad and help raise his child Mckael. His son is in Clinton, Iowa that had a lot of surgeries in his 10yrs of life and he still needs more surgeries.[12] Eric needs to be more in his life while he is going through this." (Ex. 4). Although Eric's father is gone, this plan has not changed. Eric's desire to leave the Chicago area has become even more pronounced since being shot. As Eric told probation, the experience of being shot has made him "want to relocate to 'somewhere else.'" (PSR, ¶67).

Eric's middle child is his daughter, 9-year-old Sincere Holloway. Eric was young when Sincere was born but Eric now wants to be a "responsible adult." (Ex. 2). In his words, "It's time to hang up mischief-making." (Ex. 2). Eric and Tajon, Sincere's mother, have a relationship that allows them to work together for Sincere's sake. (PSR, ¶57). Eric misses Sincere terribly and hopes to be an active presence in Sincere's life when he is released from custody.

Eric's youngest child is his son, Eric Holloway, Jr. (PSR, ¶58). Eric Jr.'s mother is Sparkle Herrion. (PSR, ¶58). Eric and Sparkle are currently in a relationship and speak daily.

---

[12] Mckael was born prematurely at only 7 months and was in an incubator until he was 9 months old. At birth, Mckael was born with both male and female reproductive organs. While otherwise healthy, Mikael has undergone a number of surgeries to assign his gender as male. According to Eric, he only needs one more surgery. (Ex. 2).

(PSR, ¶58). Sparkle told probation that Eric "is a good boyfriend, he helps me take care of my kids." (PSR, ¶59). Eric hopes the Court will give him permission to move to Clinton, Iowa and that Sparkle and his son, Eric Holloway, will move with him and they can all be a family. (Ex. 2). Eric wants to put his youngest child "on a good track." (Ex. 2). When his children are old enough, he will explain to them the facts of this case and the importance of taking responsibility for your actions. His cousin LaShawnda mirrors this view when she says, "Eric is a great father to three of his children, and they love him very much, him being back with his children will help them to grow to understand when you make a mistake in life you can always recover and become a better person." (Ex. 8).

Eric is trying his best to make something positive out of a difficult situation.[13] When probation asked Eric to describe his current emotional state, Eric stated, "'I have my days, I wake up on the good side somedays, but a few hours later I may feel down because I'm back in this situation. It can be frustrating.'" (PSR, ¶73). When asked to describe the future, Eric is hopeful when he says, "I sit in my cell making bullet points about the things I want to do. I want to be a better father and a contributor to society; I want to do better. I talk to myself to focus on doing better and not fail again." (PSR, ¶73). Eric enjoys "rapping, watching sports and 'making people laugh.'" (PSR, ¶73).

Losing his father has altered Eric's perspective. Eric relates, "I've changed. I want to change my life and show what I wanted to do while [my father] was still alive." (Ex. 2). At 28 years old, Eric is still young enough to turn his life around. This period of incarceration has changed him. Eric dreams of the day when he can put this case behind him and become the man he can be proud of, his mother can be proud of, and his children can be proud of.

---

[13] Exhibit 9 includes certificates Eric has received for completing programs while in custody in this case.

III. **WHEN CONSIDERING THE NEED FOR THE SENTENCE IMPOSED TO REFLECT ADEQUATE DETERRENCE AND JUST PUNISHMENT, 30 MONTHS IS AN APPROPRIATE SENTENCE**

This court must consider the need for the sentence imposed to reflect adequate deterrence and just punishment when constructing the appropriate sentence. The court must also craft a sentence that promotes respect for the law, is just punishment, and protects the public from future crimes. The sentence must also adequately considers general and specific deterrence.

As for specific deterrence, this time away from his family, COVID, and losing his father are all factors that have made this period of incarceration even more difficult for Eric. Eric is not the same person he was when he went into custody and has realized, through this period of incarceration, the errors of his ways and his drive to be better. A longer sentence is not needed to specifically deter Eric as he has punished himself enough for his actions that day.

A harsh sentence does not adequately reflect the purposes of general nor specific deterrence in Eric's case. A sentence of 30 months reflects deterrence and appropriately addresses the other 3553 factors.

IV. **OBJECTIONS AND CORRECTIONS TO THE PRESENTENCE REPORT**

Eric submits the following objections and corrections to the Probation Department's Presentence Report.

### A. Objections to the Presentence Report

#### 1. Eric objects to the base offense level of 19

Eric objects to the base offense level of 19 and submits the base offense level is 14.[14] The probation department opines the base offense level is 19 and comes to this calculation pursuant to § 2K2.1(c)(1)(A), which states "if the defendant used or possessed any firearm or ammunition

---

[14] After reviewing the PSR, the defense has come to this determination based on Eric's background, the size of the weapon, and the offense itself which differs from defendants position in its position paper submitted to probation.

14

cited in the offense of conviction in connection with the commission or attempted commission of another offense…apply § 2X1.1 … in respect to that other offense, if the resulting offense level is greater than that determined above." Probation believes that aggravated assault "more aptly captures the conflict in which the defendant participated, as he appears to have been a mutual combatant in a gunfight." Therefore, probation uses the base offense level for aggravated assault under § 2A2.2. The base offense level for aggravated assault is 19. Probation calculates that without this cross reference, Eric's offense level under § 2K2.1(a)(6) and § 2K2.1(b)(6)(B) would be 18. Therefore, picking the higher offense level under aggravated assault, probation believes the base offense level for Eric is 19.

Yet, Eric's actions do not reflect the elements of aggravated assault. Under Application Note 1 to § 2A2.2 aggravated assault is defined as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e. not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony. Eric's actions do not fall under any of these subsections for aggravated assault. As argued above in section II(A)(3), Eric did not intend to cause bodily injury. Eric's intent was only to calm down the situation, not to harm anyone. The other subsections do not apply either, as there was no serious bodily injury, there was no strangling, and there was no intent to commit another felony. Eric did not commit a felonious assault. The government cannot prove this by a preponderance of the evidence just as they cannot prove attempt murder.

Therefore, the defense argues the base offense level is 14 under § 2K2.1(a)(6)(A), as Eric was a prohibited person at the time of the offense. The defendant does agree with probation that the offense level is not 27.

### B. Corrections to the Presentence Report

#### 1. Paragraph 67

The PSR erroneously indicates that Eric was shot on August 20, 2020, the day before his arrest on the instant case. (PSR, ¶67). However, in actuality, Eric was shot a year before this arrest, in August 2019. (Ex. 2).

#### 2. Paragraph 83

Paragraph 83 of the PSR states that in 2016 Eric volunteered for an organization called "Agro Chicago" and that "this officer has been unable to locate an address listing for this entity." The name of the organization is "I Grow Chicago."

## V. CONCLUSION

Eric has shown this Court he is not the same person as he was before this arrest, and the Court can have confidence he is a good candidate for the sentence requested and for supervised release. For all the reasons stated, Eric respectfully asks this court to sentence him to 30 months. Any sentence other than that would be greater than necessary to meet the purposes of punishment.

Respectfully submitted,

s/ Dena M. Singer
Dena M. Singer
Bedi & Singer, LLP
53 West Jackson Blvd., Suite 1505
Chicago, IL 60604
(312) 525 2017
dsinger@bedisinger.com

16

**Certificate of Service**

I, Dena M. Singer, hereby certify, I caused a copy of the foregoing Motion to be served on upon the Assistant United States Attorney by causing it to be electronically filed with the Clerk of the Court using the CM/ECF system.

/s/ Dena M. Singer
Dena M. Singer